NOT DESIGNATED FOR PUBLICATION

No. 114,419

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN HUNTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sumner District Court; R. SCOTT MCQUIN, judge. Opinion filed September 16, 2016. Sentence vacated and case remanded with directions.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Kerwin L. Spencer*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., HILL, J., and BURGESS, S.J.

*Per Curiam*: Because the prosecutor did not follow the plea agreement in this case, we must vacate Steven Hunter's sentence and remand the matter with directions to the court to enforce compliance with the agreement.

*After negotiations, the parties make a bargain.*

The State charged Hunter with electronic solicitation, indecent solicitation of a child, contributing to a child's misconduct, and interference with law enforcement. The

1

complaint alleged that Hunter sent a text message to a 15-year-old asking: '"What sex are you interested in, women or men or both."' Hunter asked for a photo of the child, which was provided. Hunter responded: "[Y]ou are sexy, u could be my boyfriend any day." Hunter asked the child to leave his house and meet Hunter at the train park at 12:30 a.m.

Hunter and the State entered into a plea agreement. Hunter agreed to plead guilty to contributing to a child's misconduct and to interference with law enforcement. The State agreed to dismiss the remaining counts. The parties agreed:

> "On Count IV the State will not oppose the Defendant's departure motion at sentencing if Defendant is enrolled in an effective counseling program that addresses the allegations made in the complaint; On Count III the State will recommend a 1 year sentence to run concurrent to Count IV; State will recommend 30 days to be served in the county jail."

As agreed, Hunter pled guilty to contributing to a child's misconduct and interference with law enforcement. Hunter's criminal history score was B. Hunter's presumptive sentence was prison. He then filed a motion for a dispositional and durational departure sentence.

At sentencing, Hunter testified that he had been meeting with Brad Base at Sunflower Psychological Services twice a month. He testified he would not have any problems continuing and successfully completing that treatment program. When asked about his current crime, Hunter alleged that the victim initiated the conversation and that it was the victim's idea to leave home and meet him at 11:30 after curfew. He denied knowing the age of the victim. Hunter did not recall texting: '"You are sexy and you can be my boyfriend any day."'

When asked about his prior crimes, Hunter stated that at the time of that offense, he was 16 years old and the victim was 17 years old. The county attorney had a copy of

the complaint from the prior offense, which stated the victim was actually 14 years old. The county attorney responded in opposition:

> "I was disappointed to see the defendant minimizing his involvement here. One, the victim – While it's true the victim sent . . . a text earlier in the afternoon, it's also true that the late-night conversation was initiated by the defendant. . . . [I]n any event, he doesn't have any business encouraging someone late at night to go out and meet him in the park and be away from their parents at that point in time. So I'm . . . concerned about the minimization and not understanding the serious nature of what he's involved with.
>
> "Frankly, I was anticipating just wanting to make sure that he did 30 days over this, but he's probably more of a risk to society than I envisioned based upon his testimony as presented here today. And, . . . certainly he needs to avoid any jobs where he has any interaction or responsibility related to our youth. I mean, someone who encourages kids to be out past curfew doesn't have any business being associated with a church youth group or anything like that. This is – I'm glad it's Your Honor that is making this decision and not me. If it was totally my decision I guess I would [err on] the side of safety and send him to prison, but I guess I'll just put it that I'm not opposing the motion, Your Honor, but he should do some jail time over this."

Ultimately, the district court imposed a 14-month prison sentence with 12 months of postrelease supervision.

In this appeal, Hunter contends the State breached the terms of the plea agreement and seeks resentencing before a different judge. He acknowledges that he did not raise this issue below but contends this court may decide the merits of the issue because it presents a purely legal question arising on proved or admitted facts and consideration of the issue is necessary to protect Hunter's fundamental rights.

*We will address this issue.*

Generally, issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). There are several exceptions, including:

> (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case;
> (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and
> (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

This appears to be such an issue. The transcripts are before us and the plea bargain is undisputed. Our concern here is for due process.

Our system of criminal justice is powerful, but it also must be fair. "A defendant is denied due process if the State fails to fulfill a promise in the plea agreement." *State v. Jones*, 302 Kan. 111, 116, 351 P.3d 1228 (2015). And, whether the State breached a plea agreement is a question of law over which appellate courts exercise unlimited review. 302 Kan. at 116. Accordingly, our courts have on occasion considered whether the State has breached a plea agreement for the first time on appeal under the "question of law" and "fundamental rights" exceptions. See, *e.g.*, *State v. Chetwood*, 38 Kan. App. 2d 620, 623, 170 P.3d 436 (2007), *rev. denied* 286 Kan. 1181 (2008); *State v. McDonald*, 29 Kan. App. 2d 6, 9, 26 P.3d 69 (2001); *State v. Marshall*, 21 Kan. App. 2d 332, 335, 899 P.2d 1068, *rev. denied* 258 Kan. 861 (1995); *State v. Thompson*, No. 106,522, 2013 WL 310349, at *12 (Kan. App.) (unpublished opinion), *rev. denied* 297 Kan. 1255 (2013).

Courts apply fundamental contract principles to enforcement of plea agreements but are mindful that constitutional implications may require a different analysis in some cases. *State v. Peterson*, 296 Kan. 563, 567, 293 P.3d 730 (2013). Whether a contract is ambiguous is a question of law subject to de novo review. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 964, 298 P.3d 250 (2013). A plea agreement reasonably susceptible to different interpretations is ambiguous. *State v. Wills*, 244 Kan. 62, 69, 765 P.2d 1114 (1988). An ambiguous plea agreement is strictly construed in favor of the defendant. *State v. Patton*, 287 Kan. 200, 228-29, 195 P.3d 753 (2008); *Wills*, 244 Kan. at 69; *State v. Bennett*, 51 Kan. App. 2d 356, 364-66, 347 P.3d 229 (2015).

Here, the plea agreement is ambiguous because the term "effective" is subject to several interpretations. The State contends that an "effective" counseling program that "addresses the allegations made in the complaint" requires Hunter to acknowledge his wrongdoing. Hunter contends that a counseling program can be effective even though it does not require him to admit his past sexual misconduct. If the State wanted such an understanding of the term "effective" then it was free to include that wording in the agreement. We will not rewrite the agreement for the State. Caselaw supports our view.

In *Wills*, the issue was whether the State was bound by the plea agreement at a later hearing on the defendant's motion to modify his sentence. The plea agreement was silent as to whether it applied to postsentence hearings, so it was ambiguous. The court construed the ambiguity in favor of the defense.

> "If the State wants to limit its promises, it can do so by clearly setting out these limitations in the plea agreement. There can then be no question as to what the parties agree to and that the defendant's waiver of his constitutional right to jury trial is voluntary and knowing. Absent such a limitation, the defendant would reasonably expect the State to be bound by its promise at all hearings which affect the determination of his sentence.

5

"A plea agreement reasonably susceptible to different interpretations is ambiguous. The plea agreement in the instant case is reasonably susceptible to different interpretation and is therefore ambiguous. Where a statute is ambiguous, we require that it be strictly construed in favor of the accused. [Citation omitted.] We find no compelling reason to adopt a different rule in interpreting ambiguous plea agreements." 244 Kan. at 69.

We turn now to the condition precedent itself—the treatment program.

*We examine the evidence concerning treatment.*

The State promised not to oppose the departure motion if Hunter was enrolled in an effective counseling program that addressed the allegations made in the complaint. Hunter did present evidence that he was enrolled in a counseling program. Hunter testified that he had been meeting with Brad Base at Sunflower Psychological Services twice a month. He testified he would not have any problems continuing and successfully completing that treatment program. He testified he was paying for the costs of that treatment. Hunter presented an e-mail from Base that explained Base's qualifications and the treatment Hunter was receiving. Defense counsel explained that the e-mail was "the closest thing to an evaluation" that Base could give him. The State did not object to the e-mail. The e-mail stated that although Hunter has not fully admitted his past sexual behavior problems, "research does not support that this MUST happen for treatment to be effective." The State did not present evidence to the contrary. But neither party raised the issue of a breach of the plea agreement before the district court. In fact, in its brief, the State admits that if Hunter complied with the condition precedent—entering treatment—then the prosecutor did make comments contrary to the plea agreement.

We have no doubt that the plea agreement was breached by the State. Instead of not opposing the departure motion, as promised, the State said:

6

"[H]e's probably more of a risk to society than I envisioned based upon his testimony as presented here today. . . . If it was totally my decision I guess I would [err on] the side of safety and send him to prison, but I guess I'll just put it that I'm not opposing the motion, Your Honor, but he should do some jail time over this."

It is clear that the State can breach a plea agreement by explicitly failing to fulfill a promise. But even when the State makes a sentencing recommendation that it promised to make, it can still breach the plea agreement by making additional comments at sentencing that effectively undermine the sentencing recommendation. *State v. Urista*, 296 Kan. 576, 583-84, 293 P.3d 738 (2013).

Simply put, the prosecutor may not make comments that so undermine the recommended sentence that only lip service was paid to it. *State v. Foster*, 39 Kan. App. 2d 380, 386-87, 180 P.3d 1074, *rev. denied* 286 Kan. 1182 (2008). In *Urista*, the prosecutor effectively undermined the sentencing recommendation by making "unprovoked" and "particularly grave" comments regarding her personal opinion of the defendant. 296 Kan. at 593-94. The comments of the prosecutor here undermined the State's promise to not oppose the departure motion.

We note, however, that a prosecutor may correct factual misstatements and misimpressions that arise from the defense's attempt to minimize culpability and provide the court with relevant information not in the court's possession to ensure the court has complete and accurate information about the defendant. *Peterson*, 296 Kan. at 571-72. Here, the State corrected Hunter's factual misstatements and misimpressions by correcting the age of Hunter's prior victim. And the State cross-examined Hunter regarding his attempts to minimize responsibility.

But the State went further. The State promised to "not oppose" Hunter's motion for a sentencing departure to probation, and the county attorney gave his personal opinion

that Hunter should go to prison because of community safety concerns. The State merely paid lip service to the plea agreement by stating that "I guess I'll just put it that I'm not opposing the [departure] motion."

Hunter's sentence is vacated. We remand the case to the district court for resentencing with directions to the court to enforce compliance with the plea agreement.